[No. D049216. Fourth Dist., Div. One. June 12, 2009.]

RIVERWATCH et al., Plaintiffs and Respondents, v.
COUNTY OF SAN DIEGO DEPARTMENT OF ENVIRONMENTAL
HEALTH et al., Defendants and Appellants;
GREGORY CANYON LTD. et al., Real Parties in Interest and Appellants.

---

COUNSEL

Allen, Matkins, Leck, Gamble & Natsis, Patrick E. Breen, Mark J. Hattam and Kathryn D. Horning for Defendants and Appellants and for Real Parties in Interest and Appellants.

Everett L. DeLano for Plaintiff and Respondent RiverWatch.

Procopio, Cory, Hargreaves & Savitch and Walter E. Rusinek for Plaintiff and Respondent Pala Band of Mission Indians.

---

OPINION

**HUFFMAN, Acting P. J.**—This appeal and the companion appeal, *RiverWatch v. County of San Diego Dept. of Environmental Health* (June 12, 2009, D048259) (nonpub. opn.), are the latest in the lengthy course of litigation that followed 1994 voter approval of Proposition C, an initiative which paved the way for construction and operation of a privately owned solid waste facility in northern San Diego County. (San Diego County Sample Ballot & Voter Information Pamp., Gen. Elec. (Nov. 8, 1994) Prop. C.) In the underlying action giving rise to these two appeals, plaintiffs RiverWatch, the Pala Band of Mission Indians (Pala Band), and the City of Oceanside (Oceanside) sought a writ of mandate alleging that defendants County of San Diego Department of Environmental Health and Gary Erbeck, Director of the County of San Diego Solid Waste Local Enforcement Agency (collectively DEH), violated the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.) (CEQA), Proposition C, the San Diego County general plan, and the California Code of Regulations when they approved various aspects of the landfill project. The trial court granted the petition in part and denied it in part.

In case No. D048259, RiverWatch, the Pala Band and Oceanside appealed from the portions of the January 2006 judgment that were adverse to them. We affirmed the judgment, rejecting plaintiffs' claims that the landfill project violated Proposition C and the San Diego County general plan, and that the final environmental impact report violated CEQA.[1] In this appeal, case No. D049216, DEH and real party in interest Gregory Canyon Ltd. (GCL) challenge the June 2006 judgment awarding RiverWatch and the Pala Band attorney fees in the sum of $239,620 pursuant to the private attorney general doctrine set forth in Code of Civil Procedure section 1021.5 (section 1021.5).

---

[1] The court takes judicial notice of the record filed in case No. D048259. (Evid. Code, §§ 452, subd. (d), 459.)

DEH and GCL assert that the trial court abused its discretion in awarding attorney fees to RiverWatch and Pala Band under section 1021.5 because plaintiffs failed to satisfy at least two requirements for the award. Alternatively, DEH and GCL urge us to reduce the attorney fee award on grounds RiverWatch and the Pala Band had only limited success in their effort to prevent the landfill project from going forward.

We conclude there was no abuse of discretion. The litigation initiated by RiverWatch and Pala Band satisfied the requirements of section 1021.5, and the attorney fee award was consistent with the purpose of the private attorney general doctrine. The trial court presided over briefing and trial on the underlying petition, and fully understood the significance of the claims set forth in the petition. The court did, in fact, reduce the requested award for reasons it explained in detail. We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Proposition C, approved by San Diego County voters in November 1994, amended the San Diego County general plan and zoning ordinance, designating an area known as Gregory Canyon for use as a landfill and recycling center. (San Diego County Sample Ballot & Voter Information Pamp., Gen. Elec. (Nov. 8, 1994) Prop. C.) Plans for the landfill project progressed slowly amid opposition. (See, e.g., *Pala Band of Mission Indians v. County of San Diego* (1998) 68 Cal.App.4th 556 [80 Cal.Rptr.2d 294]; and *Pala Band of Mission Indians v. Board of Supervisors* (1997) 54 Cal.App.4th 565 [63 Cal.Rptr.2d 148].) DEH, as the lead public agency, certified a final environmental impact report in February 2003 (2003 FEIR), and issued the solid waste facilities permit approving the landfill project in June 2004. (*RiverWatch v. Olivenhain Municipal Water Dist.* (2009) 170 Cal.App.4th 1186, 1195 [88 Cal.Rptr.3d 625].)

In July 2004, RiverWatch, Pala Band and Oceanside filed their petition for writ of mandate and complaint for declaratory and injunctive relief in San Diego Superior Court case No. GIN038227. Plaintiffs filed a second, separate petition for writ of mandate in November 2004, after DEH approved a revised solid waste facilities permit. The court consolidated that case with case No. GIN038227.

The first cause of action for writ of mandate was the primary focus of plaintiffs' legal action. It alleged numerous violations of CEQA under 14 subheadings. The additional causes of action for writ of mandate alleged that (1) DEH's approval of the solid waste facilities permit violated California Code of Regulations, title 14, section 18756, subdivision (d), because it failed to satisfy criteria contained in the San Diego County's adopted siting

element; (2) the project as approved by DEH conflicted with San Diego County's general plan and zoning ordinance; and (3) the project as approved by DEH violated Proposition C. The fifth cause of action sought an injunction prohibiting DEH and GCL from taking any further action toward development of the landfill project. The sixth and final cause of action sought a declaration that DEH's actions approving the solid waste facilities permit violated CEQA, solid waste regulations, the San Diego County general plan and zoning ordinances, and Proposition C.[2]

In its October 3, 2005 minute order, the court granted relief as to three specific deficiencies alleged in the petition. First, the 2003 FEIR failed to address new information from a traffic needs assessment study, which revealed a drop in the level of service of State Route 76 due to tribal development projects on nearby reservations. Second, the 2003 FEIR failed to identify and consider the sources of water necessary to construct and operate the landfill—specifically, the status and sufficiency of groundwater available under an appropriative rights permit and the contingent availability of riparian water sources. The court highlighted the failure to analyze the impacts of trucking water to the site, an option only "casually mention[ed]" in a 2004 update to the 2003 FEIR and "never studied or previously proposed." Third, the mitigation measures set forth in the 2003 FEIR were inadequate because they relied on acreage already required to be preserved under Proposition C.

The January 20, 2006 peremptory writ of mandate ordered:

"Respondents County of San Diego Department of Environmental Health and Gary Erbeck, Director of the County of San Diego Solid Waste Local Enforcement Agency shall:

"1. Set aside the February 6, 2003 decision certifying the final Environmental Impact Report ('FEIR') for the Gregory Canyon Landfill Project under the California Environmental Quality Act ('CEQA'). This decision is remanded to Respondents for reconsideration.

"2. Set aside the June 2, 2004 decision making findings in connection with its approval of the Gregory Canyon Landfill Project under CEQA. This decision is remanded to Respondents for reconsideration.

"3. Set aside the June 2, 2004 decisions approving the solid waste facility permit, Statement of Overriding Considerations, and Mitigation Monitoring and Reporting Program for the Gregory Canyon Landfill Project. These decisions are remanded to Respondents for reconsideration.

---

[2] DEH and GCL assert that plaintiffs' petition alleged 60 separate claims.

"4. Set aside the October 8, 2004 decisions approving a revised solid waste facility permit and Supplemental Statement of Overriding Considerations for the Gregory Canyon Landfill Project. These decisions are remanded to Respondents for reconsideration."

The court also granted injunctive relief, stating: "Respondents are further ordered to suspend all activity associated with approval of the Gregory Canyon Landfill Project that could result in any change or alteration to the physical environment until Respondents have reconsidered their decisions and brought those decisions into compliance with the requirements of CEQA and Proposition C." However, the court did not order DEH to "start the EIR process anew." It explained that DEH "need only correct the deficiencies in the EIR identified [in the minute order] before considering recertification of the EIR. . . . Whether the corrections require recirculation of the EIR, in whole or in part, is for Respondents to decide in the first instance in light of the legal standards governing recirculation of an EIR prior to certification." The judgment awarded petitioners RiverWatch, Pala Band and Oceanside costs of suit and attorney fees.

RiverWatch and Pala Band requested $27,340.94 in costs and $455,138.12 in attorney fees pursuant to section 1021.5. DEH and GCL opposed any award under the private attorney general theory on grounds the Pala Band had financial and personal interests in the outcome of the litigation that far exceeded any benefit to the public. As to both Pala Band and RiverWatch, they maintained that the hourly fees were unreasonable and the work duplicative. Finally, DEH and GCL argued that the requested award should be reduced by 50 percent based on plaintiffs' lack of success on numerous issues.

The trial court awarded attorney fees in the sum of $239,620. In a lengthy statement of decision, the court rejected the argument of DEH and GCL that RiverWatch and Pala Band failed to satisfy the requirements of section 1021.5, and that the attorney fee request be reduced by 50 percent to reflect unsuccessful claims. It also rejected the assertion that "the work performed by two attorneys on the same task was automatically duplicative, . . . in light of [RiverWatch's and Pala Band's] counsel's representation that the work required in this litigation was divided among the attorneys representing different petitioners." The court did, however, deduct from the total amount sought "those amounts which, in the court's view, [were] somewhat excessive for the tasks performed, including time spent on preparation of the administrative record, on the opening and reply briefs, . . . on preparation of the fee motion," and for time spent on a separate action that was ultimately dismissed. This appeal ensued.

DISCUSSION

I

*THE REQUIREMENTS OF SECTION 1021.5*

■ Section 1021.5 codifies the private attorney general doctrine adopted by the California Supreme Court in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano*).[3] (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*).) The fundamental objective of the private attorney general doctrine is " ' "to encourage suits effectuating a strong [public] policy by awarding substantial attorney's fees . . . to those who successfully bring such suits and thereby bring about benefits to a broad class of citizens." ' [Citation.] The doctrine rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." (*Ibid.*)

To obtain attorney fees under section 1021.5, the party seeking fees must show that the litigation: " ' " '(1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) [was necessary and] imposed a financial burden on plaintiffs which was out of proportion to their individual stake in the matter.' [Citation.]" [Citation.]' " (*Punsly v. Ho* (2003) 105 Cal.App.4th 102, 109 [129 Cal.Rptr.2d 89] (*Punsly*); see § 1021.5.) Because the statute states the criteria in the conjunctive, each must be satisfied to justify a fee award. (105 Cal.App.4th at p. 114; § 1021.5.)

The decision whether to award attorney fees under section 1021.5 rests initially with the trial court. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 142 [185

---

[3] Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code."

Cal.Rptr. 232, 649 P.2d 874] (*Baggett*).) " '[U]tilizing its traditional equitable discretion,' that court 'must realistically assess the litigation and determine, from a practical perspective' [citation] whether or not the statutory criteria have been met." (*Ibid.*, quoting *Woodland Hills, supra,* 23 Cal.3d at p. 938; see *Punsly, supra,* 105 Cal.App.4th at p. 109.)

On appeal, we review the trial court's decision for abuse of discretion. (*Baggett, supra,* 32 Cal.3d at pp. 142–143.) "In reviewing the trial court's decision, we must pay ' "particular attention to the trial court's stated reasons in denying or awarding fees and [see] whether it applied the proper standards of law in reaching its decision." ' [Citation.]" (*Families Unafraid to Uphold Rural El Dorado County v. Board of Supervisors* (2000) 79 Cal.App.4th 505, 512 [94 Cal.Rptr.2d 205] (*FUTURE*).) We will not disturb the trial court's ruling absent a showing that there is no reasonable basis in the record for the award. (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648 [52 Cal.Rptr.3d 1] (*Colusa*); *FUTURE, supra,* 79 Cal.App.4th at pp. 511–512.) "Particularly in a case such as this, fully briefed and argued before the same trial court which heard (and partially granted) the petition, this is not an insignificant point." (*Williams v. San Francisco Bd. of Permit Appeals* (1999) 74 Cal.App.4th 961, 965 [88 Cal.Rptr.2d 565].) Moreover, in examining the order on appeal, we review the trial court's actual ruling, not its reasons. We therefore will affirm an order correct in theory, even where the court's reasoning is erroneous. (*Punsly, supra,* 105 Cal.App.4th at p. 113, citing *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

## II

### THE COST OF LITIGATION WAS DISPROPORTIONATE TO PALA BAND'S INDIVIDUAL STAKE IN THE MATTER

█ DEH and GCL argue Pala Band failed to show that " 'the cost of [its] legal victory transcend[ed] [its] personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills, supra,* 23 Cal.3d at p. 941.) Although cases refer to this requirement as the "financial burden" criterion, nothing in the language of section 1021.5 "confines the consideration of the necessity and financial burden clause to just financial interests." (*Hammond v. Agran* (2002) 99 Cal.App.4th 115, 125 [120 Cal.Rptr.2d 646] (*Hammond*).) "The idea is that the litigation for which fees are claimed must *transcend* one's interests, whether pecuniary or not." (*Id.* at p. 127, original italics.) The critical question is whether advancement of the public interest " 'is merely "coincidental to the attainment of . . . personal goals" [citation] or is "self serving . . ." . . . .' [Citation.]" (*Bowman v. City of*

*Berkeley* (2005) 131 Cal.App.4th 173, 181 [31 Cal.Rptr.3d 447] (*Bowman*).) The party seeking attorney fees bears the burden of establishing that its litigation costs transcend its personal interests. (*Save Open Space Santa Monica Mountains v. Superior Court* (2000) 84 Cal.App.4th 235, 247 [100 Cal.Rptr.2d 725].) The trial court's application of the financial burden criterion involves a "realistic and practical comparison of the litigant's personal interest with the cost of suit." (*FUTURE, supra,* 79 Cal.App.4th at p. 515.)

The written briefing on the attorney fee request focused initially on whether Pala Band had a *financial* interest in seeking the writ of mandate. Pala Band submitted the declaration of its tribal chairman Robert Smith in support of its claim that the cost of the litigation was disproportionate to Pala Band's personal interest in the outcome. Smith stated that "[t]he Pala Band had no financial incentive or economic reason to bring this lawsuit either because the Pala Band does not foresee that, if built, the proposed landfill would economically impact the Pala casino, which is the Tribe's main source of revenue." DEH and GCL argued in response that Pala Band had a financial stake "in protecting [11,800 acres of] neighboring real property" and "450,000 square foot resort and spa" from the impacts of the landfill. Their attorney's declaration that Pala Band could lose $20 million per year in resort and casino revenues directed the court to a travel Web site, which listed the number of rooms and price per room. DEH and GCL also maintained that Pala Band's personal stake was "clearly evidenced by its long history of opposition to this project in every forum available to it." At the hearing on the attorney fee request, DEH and GCL cited the declarations filed by Smith and La Jolla Band of Luiseño Indians tribal chairman Tracy Nelson that the construction and operation of the landfill would desecrate sacred sites, and argued for the first time that the tribe's "whole reason" for fighting the landfill was its belief "that it's going to destroy their sacred sites, Gregory Mountain, and harm their ability to engage in their religion."

The court rejected DEH's and GCL's arguments that Pala Band's individual stake in the litigation transcended the cost of litigation. Relying on Smith's declaration that Pala Band did not foresee that the proposed landfill would economically impact its casino, the court expressly found that "there was no monetary value to pursuing the litigation." It also ruled that the evidence offered by DEH and GCL to counter Pala Band's claim of no financial interest was incompetent and inadmissible. With regard to the argument the Pala Band had a strong individual interest in protecting the sacred religious sites, the court found that Pala Band was protecting the interests of all Luiseño people, not just Pala Band. The record provides a reasonable basis for the court's findings. (*Colusa, supra,* 145 Cal.App.4th at p. 648.) We therefore conclude that it did not abuse its discretion in ruling that the costs of litigation transcended Pala Band's individual interests.

In reaching this conclusion, we reject the arguments of DEH and GCL on appeal that the trial court ▉ applied the wrong test for determining financial burden; (2) improperly shifted the burden of proof from Pala Band to DEH and GCL; and (3) failed to measure Pala Band's noneconomic interest in preserving its sacred sites.

DEH and GCL contend that the trial court improperly balanced the public interest against Pala Band's personal motivation in ruling on the necessity and financial burden criterion. They cite in support of this contention the court's comment during the hearing that there was "some authority . . . that bringing a CEQA action per se is considered to be in the public interest, or affecting the public interest, regardless of what the underlying motive may be." The court's comments are of no consequence because the statement of decision acknowledged and applied the proper test—whether the cost of litigation was disproportionate to Pala Band's individual stake in the matter.

DEH and GCL cite the following language in the introductory section of the petition in support of their claim that the court improperly shifted the burden of proof: "The Pala Band's reservation boundaries are adjacent to the boundaries of the proposed site for the Gregory Canyon landfill. The Pala Band has long opposed the Gregory Canyon Landfill project because of its many impacts, including impacts to water quality, air quality, endangered species, traffic, traffic safety, and noise. The construction and operation of the landfill in Gregory Canyon will also desecrate Gregory Mountain and Medicine Rock, two religious sites of great importance considered sacred by the Luiseño people, including the Pala Band. Consequently, if allowed to proceed, the proposed Landfill project will adversely affect the Pala Band. The relief sought in this action would redress those injuries." DEH and GCL acknowledge Smith's declaration that the Pala Band did not foresee that the landfill would economically impact the casino, but argue that Pala Band had the burden to show economic impact on its land values *as a whole* and "provided no evidence concerning the lack of impact on the value of its land apart from the casino." The record does not support this argument. The Smith declaration also stated that the casino was the tribe's main source of revenue. Given this evidence of financial interest, the burden shifted to DEH and GCL to offer admissible evidence to rebut Pala Band's claim of no financial interest. The court properly rejected the only evidence they offered—a Yahoo! Inc. Web site that purportedly listed the room rates and number of rooms at the resort. There was no error.

There is also no merit in DEH's and GCL's argument that the court failed to "measure" Pala Band's noneconomic interest in its sacred sites in ruling that Pala Band satisfied the necessity and financial burden criterion. The court expressly stated in the statement of decision that it had considered the

argument that "Pala's individual stake in the litigation transcended the cost of the litigation." The court simply rejected the claim—raised for the first time at the hearing on the attorney fee motion—that protection of the sacred sites was an individual interest "far transcending anything the public [interest] did." To the extent DEH's and GCL's claim that the trial court failed to measure Pala Band's noneconomic interests can be read as a claim that the court failed to give the noneconomic interests their proper weight, we reject that argument as well.

DEH and GCL rely on *Punsly, supra,* 105 Cal.App.4th 102, *Hammond, supra,* 99 Cal.App.4th 115, and *Christward Ministry v. County of San Diego* (1993) 13 Cal.App.4th 31 [16 Cal.Rptr.2d 435] (*Christward*), to support their argument that Pala Band's noneconomic interests were paramount and barred recovery of attorney fees. The facts of this case are distinguishable from those in *Punsly, Hammond* and *Christward*. As we explain, Pala Band's efforts to enforce CEQA and Proposition C were not merely " ' "coincidental to the attainment of" ' " Pala Band's personal goals (*Bowman, supra,* 131 Cal.App.4th at p. 181), and the court did not abuse its discretion in ruling that Pala Band satisfied the necessity and financial burden criterion.

In *Punsly*, defendant Manwah Ho sought attorney fees under the private attorney general doctrine after she prevailed in a visitation dispute with her daughter's paternal grandparents. Ho argued that because the appellate court upheld her position in a published opinion, she satisfied the requirements of section 1021.5. This court ruled that the trial court did not abuse its discretion when it determined that "the litigation had primarily been pursued for the personal benefit of Ho and therefore was not the type of action contemplated by section 1021.5." (*Punsly, supra,* 105 Cal.App.4th at p. 118.) Using rhetorical questions, we explained that "Ho's strong, objectively ascertainable personal interests fully justified the litigation, along with any burden incurred to pursue it, and these interests act[ed] as a block to a fees award from the Punslys. . . . [W]here Ho's parental interests in assessing and pursuing her child's best interests, as she saw them, were admittedly paramount in her mind, how can we say some other incentive was needed to pursue this litigation? How can we conclude otherwise, than that her personal interest in the issues must be deemed sufficient to block any potential fee award that would have been grounded in any trial court determination that achieving a 'greater public good' [citation] was the main incentive for this litigation, or grounded in any trial court determination that the burden of achieving this 'greater public good' was proportionally greater than her individual stake in the matter?" (*Ibid.*) The case before us is different. There is nothing in the record to show that Pala Band's concern about the impact of the landfill project on the sacred sites was the kind of intensely personal interest present in *Punsly*. The allegations of the petition show that Pala Band was concerned

about the impact of the landfill project on water quality, air quality, endangered species, traffic, traffic safety and noise, as well as its impact on two religious sites.

For reasons similar to those articulated in *Punsly*, the appellate court in *Hammond* affirmed denial of a portion of the attorney fees requested under section 1021.5. *Hammond* involved a challenge to the accuracy of the statement candidate Larry Agran submitted for a city council election. (*Hammond, supra*, 99 Cal.App.4th at p. 119.) The trial court reasoned that Agran "had a 'personal stake' that was 'sufficient enough motivation to pursue the litigation without an award of attorney's fees.' " (*Id.* at p. 120.) The appellate court agreed, concluding that as a candidate Agran had a "specific, concrete and significant interest in defending the veracity of his candidate's statement: His personal credibility was at stake." (*Id.* at p. 118, italics omitted.) At the same time, the court reversed in part, ruling that Agran was entitled to the portion of attorney fees attributable to "the important issue of the scope of Elections Code section 13307 . . . [which] transcended his personal interest and . . . resulted in the enforcement of an important public right." (*Id.* at p. 119.) Again, there is nothing in the record before us to suggest that Pala Band's personal interest was equivalent to Agran's. As we explained, Pala Band's litigation raised numerous environmental and constitutional questions and transcended any undefined personal interest Pala Band had in mitigating impacts to its sacred sites.

DEH and GCL also suggest that *Christward* has "marked similarities" to this case because the petitioner sought attorney fees for work that challenged the adequacy of an environmental impact report prepared in connection with the expansion of a landfill near property used by Christward for a religious retreat. (*Christward, supra*, 13 Cal.App.4th at pp. 36, 39.) However, Christward objected to the project on grounds it would obstruct the panoramic view of the surrounding area, not because it interfered with religious practice. (*Id.* at pp. 39, 48.) Unlike the case before us, the litigation in *Christward* related directly to the project's impact on the operation of the retreat center. The trial court denied attorney fees under section 1021.5, stating that "Christward's 'private interests . . . with reference to the use of their property [was] the real basis for [the] action . . . .' " (13 Cal.App.4th at p. 49.) This court agreed that Christward's success did not confer a public benefit and affirmed denial of attorney fees. Nor did we "quarrel with the reasonableness of the court's assessment of Christward's private interest in the litigation." (*Id.* at p. 50.)

Having concluded that Pala Band satisfied section 1021.5's necessity and financial burden criterion, we need not address the question whether RiverWatch's public interest supported the attorney fee award.

III

### THE LITIGATION CONFERRED A SIGNIFICANT BENEFIT

■ DEH and GCL also contend that RiverWatch and Pala Band failed to show that "the litigation has had a beneficial impact on the public as a whole or on a group of private parties which is sufficiently large to justify a fee award." (*Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1417 [1 Cal.Rptr.2d 459], disapproved on another ground in *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1151 [74 Cal.Rptr.3d 81, 179 P.3d 882].) Unlike the separate substantial benefit doctrine, "the 'significant benefit' that will justify an attorney fee award need not represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra,* 23 Cal.3d at p. 939, citing *Serrano, supra,* 20 Cal.3d at p. 42.) "[T]he benefit may be conceptual or doctrinal and need not be actual or concrete; further, the effectuation of a statutory or constitutional purpose may be sufficient." (*Braude v. Automobile Club of Southern Cal.* (1986) 178 Cal.App.3d 994, 1011 [223 Cal.Rptr. 914].) Thus, successful CEQA actions often lead to fee awards under section 1021.5. (See, e.g., *Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427 [253 Cal.Rptr. 426, 764 P.2d 278]; *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1125–1128 [71 Cal.Rptr.2d 1].) Moreover, the extent of the public benefit need not be great to justify an attorney fee award. (See, e.g., *Protect Our Water v. County of Merced* (2005) 130 Cal.App.4th 488, 496 [30 Cal.Rptr.3d 202] [significant public benefit where litigation prompted agency to improve methods of creating and managing its CEQA records].) The trial court determines "the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Woodland Hills, supra,* 23 Cal.3d at pp. 939–940.)

Here, the court expressly found that "the result of petitioners' action was to require [DEH and GCL] to address the traffic impacts associated with the project and to ensure that the project will address the need for an adequate water supply. Petitioners' action ensured that the environmental impacts associated with the project are adequately mitigated. This assurance that the impacts of the project are properly assessed and mitigated constitutes a significant benefit to the environment and thus to the public at large. The benefit is significant and widespread."

DEH and GCL argue that the trial court confused the question whether there was a public interest with the question whether RiverWatch and Pala

Band conferred a significant benefit on the general public. They acknowledge that environmental protection and compliance with regulatory provisions are "important rights of the general public," but contend that they do not satisfy the significant benefit criterion. DEH and GCL reason that "[i]f compliance with CEQA and other environmental regulatory provisions were enough, any petitioner partly successful in its challenge to the adequacy of an EIR, no matter how small the failure to comply with regulations, would be entitled to recover attorney fees." They contend that the court failed to properly assess "the gains which have resulted" in this case. (*Woodland Hills, supra*, 23 Cal.3d at p. 940.) DEH and GCL stress that the litigation established no statewide precedent, changed no rules or regulations, and upheld no fundamental rights. RiverWatch, Pala Band and Oceanside simply asserted defects in the CEQA process which, once corrected, were unlikely to change the landfill project.

We reject the effort of DEH and GCL to minimize the benefits this litigation conferred on the general public. Each of the areas that the trial court found inadequate under CEQA involved an important environmental consideration. With drought a persistent threat in California, public agencies and members of the public living and working near the proposed project site benefitted from the court's requiring DEH to specifically identify and address the sources of water necessary to construct and operate the landfill. Members of the public also had legitimate concerns about the impact of trucking water to the site—an option only casually mentioned in a 2004 update to the 2003 FEIR and "never studied or previously proposed." The significant benefit criterion is satisfied where, as here, the litigation permits affected parties to provide additional input on remand—in this case, to voice their concerns about environmental impacts on water sources, traffic and mitigation plans involving open space. (*Bowman, supra*, 131 Cal.App.4th at p. 180.) The court did not abuse its discretion in finding that the litigation conferred "a significant benefit to the environment and thus to the public at large."

IV

*THE LITIGATION WAS SUCCESSFUL*

DEH and GCL argue that the court abused its discretion in failing to reduce the attorney fee award by 50 percent to account for RiverWatch's and Pala Band's lack of success in numerous issues in the case. There is no merit in this argument.

Courts take a "broad, pragmatic view of what constitutes a 'successful party' " in order to effectuate the policy underlying section 1021.5. (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].) The party seeking attorney fees need not

prevail on all its claims alleged in order to qualify for an award. (See, e.g., *Harbor v. Deukmejian* (1987) 43 Cal.3d 1078, 1103 [240 Cal.Rptr. 569, 742 P.2d 1290]; *Daniels v. McKinney* (1983) 146 Cal.App.3d 42, 55 [193 Cal.Rptr. 842].) The litigant is considered "successful" under section 1021.5 if the litigation "contributed substantially to remedying the conditions at which it was directed." (*Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 174 [17 Cal.Rptr.2d 510].) The critical fact is the impact of the litigation. (*Ibid.*) In other words, the "successful" party under section 1021.5 is generally the "prevailing" party, that is, the party that " ' "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." ' [Citation.]" (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1292 [240 Cal.Rptr. 872, 743 P.2d 932]; see *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 610 [21 Cal.Rptr.3d 371, 101 P.3d 174].) Prevailing counsel who qualify for an award under section 1021.5 are entitled to compensation for all hours reasonably spent. (*Serrano v. Unruh* (1982) 32 Cal.3d 621, 632–633 [186 Cal.Rptr. 754, 652 P.2d 985].)

Acknowledging the foregoing principles, the trial court found that although it had not granted the petition in all respects, RiverWatch and Pala Band prevailed on three significant issues and were therefore successful within the meaning of section 1021.5.

In their statement of the case, DEH and GCL represent that RiverWatch, Pala Band and Oceanside "alleged a multitude of separate violations, resulting in sixty separate claims." They maintain that "[t]he fact that [they] raised, and failed on, so many different claims justifies a reduction to the lodestar." DEH and GCL do not go so far as to assign a numerical rate of success to justify a reduction in the amount of attorney fees. However, their argument fails to account for the qualitative as opposed to quantitative significance of the issues included in the writ of mandate. The petition's clear intent was to enforce compliance with CEQA, Proposition C, the San Diego general plan and zoning ordinance, and the California Code of Regulations. Having presided over briefing and trial, the court was in the best position to assess the significance of the issues remanded for further consideration and action by DEH. On appeal, DEH and GCL fail to establish that there is no reasonable basis for the trial court's findings. (*FUTURE, supra,* 79 Cal.App.4th at pp. 511–512.) We also note that the court reduced the amount of attorney fees by nearly 50 percent on grounds other than those argued by DEH and GCL on appeal.

## DISPOSITION

The judgment is affirmed. Respondents RiverWatch and Pala Band shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Haller, J., and Aaron, J., concurred.