Filed 3/24/22  United Homeowners Assn. v. Peak Capital Investments CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| UNITED HOMEOWNERS ASSOCIATION II et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>PEAK CAPITAL INVESTMENTS et al.,<br><br>Real Party in Interest and Appellants. | B308682<br><br>(Los Angeles County Super. Ct. No. BS172990) |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff , Judge.  Affirmed.

Ervin, Cohen & Jessup, Ellia M. Thompson, Kimberly D. Lewis, Allan B. Cooper for Appellants.

Rodrigo A. Castro-Silva, County Counsel, Starr Coleman Assistant County Counsel, Keever Anya Rhodes Muir, Deputy County Counsel for Respondent County of Los Angeles.

Strumwasser & Woocher, Fredric D. Woocher, Beverly Grossman Palmer, Julia Michel for Plaintiffs and Respondents United Homeowners Association II.

---

## INTRODUCTION

United Homeowners Association II (UHA) filed a petition for writ of mandate under CEQA[1] challenging approval of a condominium project proposed by real parties in interest Peak Capital and The Bedford Group (Peak/Bedford).  UHA was successful on one part of its challenge, in that the superior court issued a writ of mandate and ordered the County of Los Angeles and the Los Angeles County Board of Supervisors (collectively, the County) to withdraw approval of the project and complete a limited environmental impact report (EIR) with respect to traffic impacts.  The superior court rejected UHA's additional CEQA challenges, including those involving air quality, hazardous waste, and aesthetics.

The court then granted UHA's motion for attorney fees under Code of Civil Procedure section 1021.5, and awarded UHA fees of $118,089.00.  Peak/Bedford appeals that award, asserting that (1) UHA is not entitled to fees because it neither enforced an important right affecting the public interest nor conferred a significant benefit on a large class of persons, and (2) the court erred by failing to clearly show how it reached the figure of $118,089.00.  We find no error and affirm.

---

[1] The California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.)  All further statutory references are to the Public Resources Code unless otherwise indicated.

2

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *Petition, trial, and ruling*

UHA filed a petition for writ of mandate on April 8, 2018 and an amended petition on December 11, 2018 alleging the following facts.[2]

The project at issue is the proposed construction of an 88-unit, five-story luxury condominium complex on a 1.84-acre parcel in the View Park-Windsor Hills neighborhood, an unincorporated area of Los Angeles County. The property, 5101 South Overhill Drive, is across the street from the Inglewood Oil Field, Kenneth Hahn State Recreation Area, Norman O. Houston Park, the Stocker Corridor Trail, and Windsor Hills Magnet School. UHA alleged that "[t]he proposed Project includes 139,281 square feet of living space and 206 subterranean spaces used for vehicle parking within a five-story structure 65 feet in height and three levels of subterranean parking. The Project also anticipates a pool and spa area with landscaping."

Real parties Peak/Bedford applied for approval to build the project. In general, "[w]hen a local agency considers the environmental effects of a proposed project, CEQA provides three options. The agency must prepare and certify the completion of an EIR if the project 'may have a significant effect on the environment.' (§ 21151, subd. (a), italics added.) If the agency determines the project will not have a significant effect on the environment, it must prepare a negative declaration to that

---

[2]    We remind counsel on both sides that each brief must reference the record with the "*volume and* page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C) (emphasis added).)

3

effect. (§ 21080, subd. (c)(1); [Cal. Code Regs., tit. 14], § 15064, subd. (f)(3).[ ] Finally, if the project has potentially significant environmental effects but these effects will be reduced to insignificance by mitigation measures that the project's proponent has agreed to undertake, CEQA requires the local agency to prepare a mitigated negative declaration [(MND)]. (§ 21080, subd. (c)(2); [Cal. Code Regs., tit. 14], § 15064, subd. (f)(2).)" (*Moss v. County of Humboldt* (2008) 162 Cal.App.4th 1041, 1048.)

The County Regional Planning Commission approved the project in August 2017 with an MND, and issued a conditional use permit (CUP). UHA, "a California nonprofit mutual benefit corporation" that is "comprised of approximately 11,000 general members," appealed the decision to the Board of Supervisors, which upheld the findings of the commission.

UHA filed its petition for writ of mandate against the County as respondent and Peak/Bedford as real party in interest. Because the amended petition is relevant to the appeal, we focus on the allegations in that version. UHA alleged three causes of action: violation of CEQA, injunctive relief, and declaratory relief. Under the CEQA cause of action, UHA alleged that six aspects of the project failed to meet CEQA requirements: (1) the MND's traffic study was deficient and failed to adequately assess the project's traffic impacts; (2) an EIR was required to address air quality impacts on nearby residents and the school; (3) hazards and hazardous waste were inadequately evaluated, in light of the project's proximity to the oil field; (4) the MND did not evaluate aesthetics and the blockage of neighboring homes' views; (5) the MND failed to adequately evaluate greenhouse gas impacts; and (6) impacts on land use were inadequately analyzed. UHA

4

prayed for a peremptory writ of mandate, an injunction, costs, and attorney fees.

The parties filed briefs, and the court held a hearing. UHA abandoned its contentions regarding hazardous waste and greenhouse gases. The court held in favor of UHA in part. Regarding traffic, the court found that the project's traffic engineers failed to account for a nearby redevelopment project. The court stated, "There is substantial evidence that had an analysis of the cumulative effect of the Baldwin Hills Crenshaw Plaza Redevelopment Project at LaBrea and Slauson Avenues been included with the Project, the PM peak traffic Level of Service would drop to an F," the lowest level of service.[3] The court found that UHA failed to meet its burden on its remaining contentions under CEQA. In a later minute order, the court stated, "As the court found the County's actions and determinations were justified as to Air Quality, Land Use and Aesthetics but not as to Traffic and Circulation, the County shall prepare an Environmental Impact Report (EIR) addressing the significance of environmental impacts regarding Traffic and Circulation."

The court entered judgment granting a writ of mandate and directing the County to "set aside 'the Project's entitlements (a conditional use permit and a vesting tentative tract map),'" "set aside the adoption of the Mitigated Negative Declaration as to impacts from traffic and circulation," "prepare an

---

[3]     "Level of service is a measure of traffic congestion at intersections, which ranges from A (little or no delay) to F (extreme traffic delay)." (*American Canyon Community United for Responsible Growth v. City of American Canyon* (2006) 145 Cal.App.4th 1062, 1080.)

Environmental Impact Report in full compliance with [CEQA] as to traffic and circulation," and "refrain from taking any action to approve or otherwise permit the construction of the Project or a substantially similar project until after fully complying with this Writ of Mandate." The court also stated in the judgment that UHA was entitled to recover its costs and attorney fees.

B.     *UHA's motion for attorney fees*

UHA filed a motion requesting costs and attorney fees under Code of Civil Procedure, section 1021.5 (section 1021.5), which states in part, "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate. . . ."

UHA requested attorney fees totaling $169,651.50 for approximately 230 hours, which included an estimated $22,000 for preparing and arguing the motion for attorney fees. UHA argued that it was entitled to an award of attorney fees under section 1021.5 because it enforced "an important public right and benefitting the residents of Windsor Heights, View Heights, View Park, and Ladera Heights, as well as in other adjacent and nearby areas in the City and County of Los Angeles." UHA asserted that it had "achieved its objectives: the project's approvals were rescinded and invalidated, and no future project can be approved without an adequate environmental review under CEQA." UHA noted that "[i]n the CEQA context . . .

6

actions requiring a governmental agency to analyze or reassess environmental impacts associated with a proposed project confer a significant benefit." (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 737.)

In addition, UHA asserted that the fee award requested was reasonable. Lead counsel Beverly Grossman Palmer stated in her declaration that the requested fees included "a total of 230 hours of combined attorney time, of which 151.3 hours were billed by myself at the hourly rate of $695, and 78.7 hours were billed by Dale Larson (now a partner) at the senior associate hourly rate of $540," plus the amount for the fees motion, which Palmer said would be supplemented in the reply. Palmer attached billing records showing the time she and Larson worked on the case.

Peak/Bedford opposed the motion for attorney fees; the County joined. Peak/Bedford argued that UHA "either abandoned or lost on almost all of its[ ] CEQA challenges to the Project," in that the "sole relief" was that an EIR must be prepared regarding traffic only, and therefore UHA "failed to achieve its[ ] primary objective of stopping the entire Project in its tracks. It did not even succeed in reducing the Project's size, scope or layout.[ ] Instead, the Project remains exactly as it was when initially approved. Therefore, [UHA] cannot establish that it was a successful party." Peak/Bedford further asserted that the litigation did not confer a significant benefit on the general public or a large class of persons. Finally, Peak/Bedford asserted that the requested fees should be reduced due to UHA's limited success in the case, because UHA's counsel's hourly rates were too high, and because counsel inappropriately block-billed.

In its reply, UHA asserted that the fees requested were reasonable. UHA also asserted that block billing did not require

7

a reduction. UHA reduced its request for fees relating to the fees motion from $22,000 to $14,803.50.

In a written tentative ruling, the court stated that it was inclined to grant the motion and award UHA $89,286.30 in attorney fees. The court found UHA to be the successful party, and that the action conferred a significant benefit on the public or a large class of persons. The court found that Palmer's and Larson's rates were reasonable, but reduced recovery for several of the block-billed entries. The court further stated that "a reduction of 40 percent for [UHA]'s limited success on the Petition is appropriate." The court also reduced the fees requested for the attorney fees motion.

At the hearing on the motion, UHA argued the 40 percent reduction was excessive. Peak/Bedford argued that an even further reduction was warranted based on UHA's limited success. The court took the motion under submission.

In a written ruling, the court granted the motion and awarded UHA attorney fees of $118,089.00. The court found that UHA was the successful party in that it "achieved actual and practical relief in its challenge to the Project. [UHA] achieved enforcement of important environmental statutory protections by ensuring compliance by the County with its CEQA obligations." The court found that the litigation concerned the enforcement of CEQA, which itself involved "important public rights affecting the public interest," and, "The result of [UHA's] action requires the County further identify and analyze significant effects on the environment with regard to traffic and circulation in the context of an environmental impact report. Such a result is a significant benefit and effectuates an important statutory policy." Moreover, "enforcing CEQA's requirements for an 88-unit condominium

8

building in a[n] urban residential area not only affects the immediate neighborhood, it affects the residents of Windsor Heights, View Heights, View Park, and Ladera Heights," and therefore "the litigation conferred a significant benefit on a large class of persons."

The court further found that UHA's claimed attorney fees were "to some extent unreasonable and require reductions." As in the tentative, the court found the hourly rates of Palmer and Larson reasonable. However, the court agreed with Peak/Bedford that block billing is "problematic," and, in footnote 5 of the written order, noted each of the block-billed entries that Peak/Bedford cited as inappropriate. The court also noted that Peak/Bedford objected to "duplicative billing—occasions when both [of UHA's] attorneys participated in a conference and each billed separately for the time." In footnote 6, the court listed each instance of duplicative billing Peak/Bedford cited. The court also noted that attorney Larson billed 2.2 hours for a trial setting conference on a day when no such conference was scheduled.

The court noted that UHA convinced the court at oral argument that the 40 percent reduction based on limited success was not appropriate. The court stated that UHA "narrowly prevailed on a single issue pertaining to the mitigated negative declaration, despite raising challenges on multiple, separate grounds." However, the court stated that it was "a significant issue, [and] ultimately the court required the County to prepare an environmental impact report only as to the traffic and circulation element." The court looked at the total time billed for the petition, amended petition, and briefing, and found that not all time was "reasonable" in light of UHA's limited success. The

9

court also found that the amount requested for the fees motion was excessive.

The court concluded, "Based on the foregoing, the court makes reductions in hours claimed to reflect a reasonable attorney's fee award. As described above, the court has made reductions for block billing (see footnote 5 for specific billing entries), duplicative efforts by counsel (see footnote 6 for specific billing entries), limited success (as to petition allegations, briefing and related activities), Attorney Larson's billing error and an excessive claim for the attorney's fees motion. The court finds Petitioner is entitled to reasonable attorney's fees in this matter in the amount of $118,089." The court did not further explain how it reached this total.

Peak/Bedford timely appealed. The County did not appeal.[4]

## DISCUSSION

Peak/Bedford asserts that the court erred in finding that UHA was entitled to an award of attorney fees, and in calculating the amount of those fees awarded. "The determination whether a party has met the requirement for an award of fees and the reasonable amount of such an award are matters best decided by the trial court in the first instance." (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36

---

[4] The County filed a respondent's brief purporting to join Peak/Bedford's opening brief, and asking that the court's ruling be reversed. However, as a general rule, respondents who fail to file a cross-appeal cannot claim error on appeal. (See, e.g., *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121.) The County's contentions, which consist of little more than joining the opening brief, have not been considered.

Cal.App.5th 970, 980 (*Sweetwater*).) We review a fee award under the abuse of discretion standard, and "presume the trial court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." (*Canyon Crest Conservancy v. County of Los Angeles* (2020) 46 Cal.App.5th 398, 409 (*Canyon Crest*).)[5] We find no error and affirm.

A.      *Entitlement to attorney fees*

Under section 1021.5, a court may award attorneys' fees to a "successful party" in an action which has "resulted in the enforcement of an important right affecting the public interest" if a "significant benefit . . . has been conferred on the general public or a large class of persons." (§ 1021.5.) "Thus, to obtain fees under section 1021.5, the moving party must establish all of the following: (1) he or she is a 'successful party,' (2) the action has resulted in the enforcement of an important right affecting the public interest, (3) the action has conferred a significant benefit on the public or a large class of persons, and (4) an attorney fees award is appropriate in light of the necessity and financial burden of private enforcement." (*Hall v. Department of Motor Vehicles* (2018) 26 Cal.App.5th 182, 188.)

Here, Peak/Bedford challenges the second and third elements, asserting that the litigation neither resulted in the enforcement of an important right affecting the public interest, nor conferred a significant benefit on the public or a large class of

---

[5]      Peak/Bedford argues in its opening brief that the court "did not apply the proper test" and suggests a different standard of review may apply. In its reply, however, Peak/Bedford acknowledges the abuse of discretion standard applies.

persons.[6]  UHA asserts that the trial court's ruling on these elements was correct.  We consider each element separately.

1.  *Enforcement of an important right affecting the public interest*

Peak/Bedford asserts that UHA did not meet the second element because it "did not prompt a significant change in the state of affairs," and "[i]t is pure speculation as to whether a new traffic study will make any new or additional findings."  UHA argues the trial court did not abuse its discretion in finding in UHA's favor on this element.

To determine whether an "important" right is at issue, a court must "exercise judgment in attempting to ascertain the 'strength' or 'societal importance' of the right involved." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 935 (*Woodland Hills*).)  When the right at issue is statutory, "courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals."  (*Id.* at p. 936.)

---

[6]  As to the first element, Peak/Bedford asserts in passing that UHA was not a successful party because it "did not prompt a significant change in the state of affairs," in that "[t]he only 'change' that occurred is that the traffic study must be updated." This brief argument is copied verbatim from Peak/Bedford's opposition below, and it neither discusses the court's ruling on this point nor argues that the trial court's finding constituted an abuse of discretion.  We therefore find this contention forfeited. (See, e.g., *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [the court will not consider contentions lacking "pertinent argument or an attempt to apply the law to the circumstances of [the] case"].)

12

Peak/Bedford focuses less on the rights at issue in the litigation and more on the results, asserting that "no government policy changes were made as a result of this lawsuit," no "untoward acts or improper agency policies" were uncovered, and it is "pure speculation as to whether a new traffic study will make any new or additional findings." The trial court identified the important right as the enforcement of CEQA, and "as a general matter, litigation alleging CEQA violations can involve important rights affecting the public interest." (*Canyon Crest, supra,* 46 Cal.App.5th at p. 410; see also *Concerned Citizens of La Habra v. City of La Habra* (2005) 131 Cal.App.4th 329, 335 (*CCLH*) ["CEQA involves important rights affecting the people of this state and . . . section 1021.5 was enacted to encourage the enforcement of such legislation by public interest litigation"].)

Nevertheless, "enforcement efforts alone do not justify an attorney fee award; the benefit gained must be significant and widespread." (*CCLH, supra,* 131 Cal.App.4th at p. 336; see also *Woodland Hills, supra*, 23 Cal.3d at p. 939 ["the public always has a significant interest in seeing that legal strictures are properly enforced" but "the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation"].) Thus, in a case where the benefit to the public is "the proper enforcement of the law," the "significant benefit and important right requirements of section 1021.5 to some extent dovetail." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1158.) We therefore turn to the benefit element.

## 2. *Conferring a significant benefit on the public or a large class of persons*

Peak/Bedford contends the litigation did not confer a "benefit" in that UHA succeeded only in necessitating a new traffic report, which might not have any practical impacts on the project.  It also asserts that the litigation did not affect "the public or a large class," because UHA "is a small neighborhood group comprised of approximately 17 residents" who tried but failed to "stop the Project" entirely.  UHA correctly points out that the trial court rejected this contention, finding that Peak/Bedford's characterization "greatly understates the impact of a project of this size in a neighborhood of single family residences," and the "traffic and circulation impact extends well beyond the Project and its immediate neighbors."  Peak/Bedford argues that requiring a new traffic study is not tantamount to a finding that the project actually would impact traffic in the surrounding areas.

"[T]he 'significant benefit' that will justify an attorney fee award . . . may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills, supra*, 23 Cal.3d at p. 939.)  A court should "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case."  (*Id.* at pp. 939-940.)  "[T]he extent of the public benefit need not be great to justify an attorney fee award." (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 781.)

Here, the litigation invalidated the MND and required the County to complete an EIR regarding traffic.  Although the

14

details of the traffic study are not in the record, the study and EIR were relevant to at least one heavily traveled intersection. In the judgment, the court noted that the intersection of LaBrea and Slauson already had a level of service of D in afternoon peak hours, and had the traffic study for the project been done differently, it might have shown a level of service of F. In its ruling on the attorney fee motion, the court held that the traffic issue would affect a significant number of people, including "the residents of Windsor Heights, View Heights, View Park, and Ladera Heights." The residents of these areas, plus any other people using the heavily traveled intersection of LaBrea and Slauson, would receive the benefit of ensuring the County complied with CEQA in approving the project.

Peak/Bedford compares this case to *CCLH, supra*, 131 Cal.App.4th 329. There, a neighborhood organization, CCLH, challenged the approval of a proposed Costco warehouse and retail store in the City of La Habra. "CCLH alleged six causes of action, one of which was the failure to comply with [CEQA] in several respects. While five of the causes of action were unsuccessful, the CEQA challenge achieved partial success: The superior court agreed with one of the several alleged CEQA defects, finding that the mitigated negative declaration certified by the City needed revision." (*CCLH, supra*, 131 Cal.App.4th at p. 331.) The trial court agreed with CCLH that the MND failed to adequately assess potential traffic impacts of the project and ordered the city to reassess the traffic issue; however, the court stopped short of requiring the city to complete an EIR. (*Id.* at p. 333.)

CCLH then sought attorney fees under section 1021.5. The court denied the request, and CCLH appealed. The Court of

15

Appeal affirmed the ruling, stating, "[T]he trial court assessed the circumstances of the case and determined the gains obtained by CCLH did not confer a significant benefit on a large class of people. Having heard the evidence in support of CCLH's challenges to the MND, it rejected all of the claimed defects except one. The trial court agreed the MND did not adequately support the conclusion that the effects of cut-through traffic were mitigated, but it felt the inadequacy was a 'minute blemish' that could be repaired." (*CCLH, supra,* 131 Cal.App.4th at p. 335.) The court noted that to find a "significant benefit" on the public or a large class of persons, "the benefit gained must be significant and widespread. The trial court determined it was not. On this record, we cannot conclude that the trial court's determination was a prejudicial abuse of discretion." (*Id*. at p. 336.)

Peak/Bedford argues here, as it did below, that *CCLH* is "directly on point." It asserts that in issuing the writ and ordering the County to complete an EIR, the court "did not find that there was an environmental impact related to traffic, or even that it was likely that there was an impact." However, the completion of an EIR for the purposes of assessing traffic impacts of the project is itself a benefit to the public using the streets near the project. No further effect on the project is required. (See, e.g., *RiverWatch v. County of San Diego Dept. of Environmental Health, supra,* 175 Cal.App.4th at p. 782 ["The significant benefit criterion is satisfied where, as here, the litigation permits affected parties to provide additional input on remand"]; *Keep Our Mountains Quiet v. County of Santa Clara, supra,* 236 Cal.App.4th at p. 739 ["The trial court reasonably could have concluded this suit conferred a significant benefit on the general

16

public by requiring the County to further assess . . . 'important environmental consideration[s].'"].)

Peak/Bedford has not demonstrated that the trial court abused its discretion in finding that UHA was entitled to an award of attorney fees under section 1021.5. We therefore turn to Peak/Bedford's contentions about the amount of the fee award.

B. *Amount of fee award*

UHA originally requested attorney fees totaling $169,651.50 for approximately 230 hours of work.[7] The court reduced the award based on (1) UHA's limited success, (2) block billing, (3) duplicative billing, (4) Larson's erroneous bill for the trial setting conference (striking 2.2 hours, $1,188), and (5) an excessive amount requested for the fees motion (awarding $9,880 rather than the $22,000 initially requested). The court was only specific about the hours and amounts for the last two of these categories. The court discussed UHA's limited success, but did not specify how much it was reducing the fee award accordingly. And although the court listed in footnote 5 the block-billed entries to which Peak/Bedford objected and listed in footnote 6 the duplicative bills to which Peak/Bedford objected, the court did not specify which of these entries, if any, it was reducing or

---

[7] "Attorney fee awards are based on the lodestar, i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1183 fn. 1 (*SOURCE*).) A court may reduce the amount awarded based on a party's degree of success or if the court believes the billing is unjustly inflated. (*Id*. at pp. 1185-1186.)

striking.  The court awarded UHA attorney fees of $118,089.00, over $50,000 less than UHA requested.

Peak/Bedford challenges several aspects of the court's attorney fee award, but each argument comes down to the contention that the trial court failed to clearly explain how it arrived at the final amount awarded.  Peak/Bedford notes that although the court stated it was reducing the fee award for the factors listed above, for most of those factors the court did not explain how many hours were being subtracted. And adding the objectionable bills together (the block-billed entries, the duplicative bills, the erroneous trial setting conference, and the reduction for the fees motion) amounts to $66,952.00— more than the court's reduction of $51,562.50.  Peak/Bedford asserts that these totals suggest the court did not actually reduce the fee award for UHA's limited success, despite stating that it did so. Peak/Bedford asserts, "Although the Trial Court undertook a cursory analysis of the hours expended, it never arrived at a logical or reasonably defined conclusion that supports the ultimate fee awarded."

However, a court's failure to provide a "reasoned explanation" for an attorney fee award does not constitute reversible error; a superior court is not required to issue a statement of decision for a fee award.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140.)  "[W]e cannot reverse an attorney fee award solely for lack of an explanation by the trial court. We can reverse only if the record contains some indication that the trial court considered improper factors or did, indeed, simply snatch its award 'from thin air.'"  (*SOURCE, supra,* 235 Cal.App.4th at pp. 1189-1190; see also *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67 (*Gorman*) ["The absence of an

18

explanation of a [fee award] ruling may make it more difficult for an appellate court to uphold it as reasonable, but we will not presume error based on such an omission"].)

Peak/Bedford argues that because the court's math does not add up, it essentially snatched the amount "from thin air" and therefore abused its discretion in determining the fee award. Peak/Bedford relies on *Gorman, supra,* 178 Cal.App.4th 44, in which the court reversed and remanded a fee award because "despite close study of the record," the Court of Appeal was "unable to surmise a reasonable explanation" for the amount awarded. (*Id.* at p. 53.) There, the plaintiffs, as prevailing party, "requested attorney fees of $1,350,538.83[ ] and costs in excess of $266,561.96, including the fees and costs for filing their motion. . . . After a contested hearing on their motion, in a 27-word order the trial court awarded plaintiffs 'reasonable attorneys' fees of $416,581.37 and reasonable costs of $142,432.46.'" (*Id.* at p. 53.) The plaintiffs appealed.

The Court of Appeal noted that the trial court's award of fees was "a little under 61 percent of [the] lodestar amount." The court was confused because the precise amount of the award "suggests that it is the product of some mathematical computations. We have tried in vain for days to recreate this result by means of various formulas." (*Id.* at p. 99.) The court continued, "[A]fter much puzzlement and frustration, we have been unable to surmise any mathematical or logical explanation for the trial court's award of $416,581.37. Instead, the number appears to have been snatched whimsically from thin air. It is the essence of arbitrariness to make an award of attorney fees that cannot be justified by the plaintiffs' request, the supporting bills, or the defendant's opposition. We are unable to ascertain a

19

reasonable basis for the trial court's reduction of the lodestar amount." (*Id*. at p. 101.)  The court concluded, "It is not the absence of an explanation by the trial court that calls the award in this case into question, but its inability to be explained by anyone, either the parties or this appellate court.  We are compelled to conclude that there is no reasonable connection between the lodestar amount and the trial court's award." (*Ibid*.)

*Gorman*'s approach was questioned by the court in *SOURCE, supra*, 235 Cal.App.4th 1179.  In *SOURCE*, the plaintiff community group was the prevailing party in a CEQA case.  It sought $231,098 in attorney fees; the trial court awarded $19,176.  (*Id*. at p. 1182.)  The group appealed, and relying on *Gorman*, argued in part that the trial court's failure to articulate its reasoning for the reduction mandated reversal. (*Id*. at p. 1189.)  The Court of Appeal rejected this argument, stating, "We respectfully disagree with *Gorman*'s analysis.  In our view, the precision of the amount awarded [in *Gorman*] indicates that rather than acting arbitrarily, the trial court applied some rational calculation, even though the appellate court could not discern what it was." (*Id*. at p. 1189.)  Turning to the case before it, the Court of Appeal in *SOURCE* found that reversal was not warranted because "although the [trial] court did not state the lodestar amount or explain how it arrived at the amount awarded, it did make it clear that it intended to substantially reduce the fees based on what it saw as outrageous overbilling." (*Id*. at p. 1190.)  The trial court articulated several "legitimate reasons" for reducing the fee award, and the Court of Appeal concluded, "Because the record shows that the court acted for legitimate reasons, we cannot find an abuse of discretion simply because it failed to make its arithmetic transparent."  (*Ibid*.)

This case is more like *SOURCE* than *Gorman*. Here, the trial court articulated multiple reasons for reducing the attorney fee award, even though it did not show its calculations. The court considered the specific allegations in UHA's petition, noting, for example, that UHA had abandoned its greenhouse gas and land use allegations, but its "aesthetics challenge" was "strong," even though it was not successful. The court closely reviewed the billing records, and observed that UHA's attorneys billed about 35 hours for drafting the petition and amended petition, and about 70 hours on the opening and reply briefs. Thus, although Peak/Bedford argues that the court failed to undertake "a careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 48), the record does not support this contention. The court did not articulate how much it was reducing the award based on UHA's limited success, but it was not required to. "In awarding attorney fees in a lesser amount than requested, trial courts are not required to specify each and every claimed item found to be unsupported or unreasonable." (*Gorman, supra*, 178 Cal.App.4th at p. 67.)

We are also not persuaded by Peak/Bedford's contention that the court intended to reduce the fee award by the *total* of the block-billed entries listed in footnote 5, and therefore the court's math does not add up. Peak/Bedford argues that the court's order "directs the parties to 'see footnote 5 for specific [block] billing entries' leading a party to believe that all $41,169.50 was struck." However, footnote 5 explicitly says it is a list of billing entries Peak/Bedford—not the court—identified as "problematic." The court's order also stated that "several of the block billing entries must be reduced"; it did not say *all* identified block-billed entries

21

would be stricken.  Again, the court's failure to specify *which* block-billed entries were reduced or stricken was not an abuse of discretion.

In short, Peak/Bedford has failed to demonstrate that the trial court's award of attorney fees to UHA, or the amount of fees awarded, constituted an abuse of discretion.

## DISPOSITION

The attorney fee award is affirmed.  UHA is entitled to its costs on appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

MANELLA, P. J.

CURREY, J.

22