[No. G034014. Fourth Dist., Div. Three. June 23, 2005.]

CONCERNED CITIZENS OF LA HABRA et al., Plaintiffs and Appellants,
v.
CITY OF LA HABRA et al., Defendant and Respondent;
COSTCO WHOLESALE CORPORATION, Real Party in Interest and
Respondent.

## COUNSEL

Van Blarcom, Leibold, McClendon & Mann, Stephen M. Miles and John G. McClendon for Plaintiffs and Appellants.

Jones & Mayer, Kimberly Hall Barlow and Krista MacNevin Jee for Defendant and Respondent.

Greenberg, Glusker, Fields, Claman, Machtinger & Kinsella and Garrett L. Hanken for Real Party in Interest and Respondent.

## OPINION

**SILLS, P. J.**—The Concerned Citizens of La Habra (CCLH) filed a petition for writ of mandate challenging the approval by the City of La Habra and others (the City) of the proposed construction of a retail warehouse facility by Costco Wholesale Corporation (the Project). CCLH alleged six causes of action, one of which was the failure to comply with the California Environmental Quality Act (Pub. Resources Code, § 21000 et seq., CEQA) in several respects. While five of the causes of action were unsuccessful, the CEQA challenge achieved partial success: The superior court agreed with one of the several alleged CEQA defects, finding that the mitigated negative declaration certified by the City needed revision. It issued a writ rescinding

approval of the Project until the revision was made. Subsequently, CCLH moved for attorney fees under the private attorney general statute (Code Civ. Proc., § 1021.5),[1] which were denied. CCLH appeals from the denial of attorney fees, claiming it fulfilled the requirements of the statute and the trial court abused its discretion. We affirm.

## FACTS

The City approved the Project without preparing an environmental impact report (EIR); instead, it certified a mitigated negative declaration (MND), finding that although the Project had significant environmental impacts, they had been alleviated through mitigation measures. CCLH, which had urged the City to prepare an EIR, filed its petition against the City, alleging six causes of action: (1) failure to comply with CEQA, (2) violation of redevelopment law, (3) prohibited gift of public funds, (4) waste of public property, (5) violation of state planning and zoning law based on Costco's intent to operate a gasoline station and tire center on a previously abandoned gas station site; and (6) abuse of discretion for acting in violation of the various laws pleaded in the previous five causes of action.

The City successfully demurred to the second, third, and fourth causes of action in July 2003. After a hearing, the trial court denied the fifth and sixth causes of action. The remaining cause of action, the CEQA challenge, alleged that the City failed to include in the MND "substantial evidence that significant unmitigated impacts would result from the [Project]," i.e., traffic, noise, and land use impacts. The trial court found any noise impacts had been mitigated. It also found there were no significant land use impacts because there was no showing that the proposed gas station use would be "on the same part of the land" as the previous one.

Among CCLH's challenges to the traffic impacts, however, the trial court found the challenge to the analysis of "cut-through traffic" had merit: The City failed to provide the basis for its conclusion that the Project would generate an insignificant increase in the traffic through the adjacent neighborhoods, and CCLH made a fair argument that the increase would be significant. On November 5, the trial court ruled that the writ should issue "[o]rdering the City to set aside and rescind its approval of the Costco Project and [o]rdering the City to comply with the *California Environmental Quality Act* by preparing an EIR before any similar project is approved or implemented."

Costco, the real party in interest, filed a motion to vacate the judgment (§ 663), in which the City joined. They argued the evidence supported the

---

[1] All statutory references are to the Code of Civil Procedure.

conclusion that the MND was adequate to address traffic issues and the City should not be required to prepare an EIR. The trial court treated the motion as one making objections or proposals to a proposed judgment (Cal. Rules of Court, rule 232(f)) and, after a hearing, reiterated its finding that the MND was inadequate: "[T]here is substantial evidence in the record that supports a fair argument that the Project will result in significant environmental impact with regard to the cut-through traffic. [¶] There is also an absence of sufficient evidence or analysis to support the conclusion that the potential cut-through traffic will be insignificant. [¶] The mitigation analysis is flawed as it is a result of unsupported conclusions. It may be that all of the cut-through traffic can be mitigated, but whether a particular mitigation measure is potentially successful can only be based upon knowledge of what is to be mitigated. The record simply does not make that clear."

The trial court changed its mind, however, about the necessity for the preparation of an EIR. Although CCLH argued that CEQA required the preparation of an EIR when a negative declaration was invalidated, the trial court disagreed. "The Public Resources Code does not deprive this court of its equitable powers. . . . [T]here is a minute blemish . . . as to the mitigated negative declaration. One that this court believes can be . . . appropriately remedied . . . [, and] to require [the City] . . . to bear the cost of a full blown environmental impact [report] because there's a tiny blemish that probably can be repaired, is just not what the law contemplates, the way I see it."

The trial court entered a judgment incorporating its November 5 order and its ruling on the proposals and objections to the proposed judgment. The judgment issued the writ "remanding the proceedings to respondent City . . . and commanding respondent City . . . to set aside its decisions . . . certifying a mitigated negative declaration and approving the Costco project and to reconsider its action in light of this Court's order of November 5, 2003, as modified by the Court on December 11, 2003, and to take any further action specially enjoined on it by law; but nothing in this judgment or in that writ shall limit or control in any way the discretion legally vested in [the City]." Subsequently, at Costco's request, the City prepared an EIR rather than merely amending the MND.

CCLH moved for attorney fees in the amount of $128,318.75 under section 1021.5. The court declined to award any fees, stating, "It would be unfair to impose an obligation to pay attorney fees on the Respondents. The Petitioners were only successful in one small regard and were unsuccessful on all significant issues. There were no significant benefits derived by a large number or class of people and Petitioners did not obtain the outcome they desired. . . . There is no evidence before the Court that Petitioners' efforts

were the catalyst to any action by the City." CCLH appeals the denial of attorney fees, claiming the court's refusal to award them was an abuse of discretion.

## DISCUSSION

■ Section 1021.5[2] "codifies the 'private attorney general' doctrine of attorney fees articulated in *Serrano v. Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303] . . . and other judicial decisions. [Citation.]" (*Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 634 [71 Cal.Rptr.2d 632].) The statute gives the trial court discretion to award fees to a successful party if (1) its action has resulted in the enforcement of an important public right, (2) the general public or a large class of persons has received a significant benefit, (3) the burden of private enforcement is disproportionate to the litigant's personal interest, and (4) it is unfair to make a successful plaintiff pay the fees out of any recovery. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200]; *Hammond v. Agran* (2002) 99 Cal.App.4th 115 [120 Cal.Rptr.2d 646]; *Family Planning Specialists Medical Group, Inc. v. Powers* (1995) 39 Cal.App.4th 1561 [46 Cal.Rptr.2d 667].)

■ The award of fees under section 1021.5 is an equitable function, and the trial court must realistically and pragmatically evaluate the impact of the litigation to determine if the statutory requirements have been met. (*Otto v. Los Angeles Unified School Dist.* (2003) 106 Cal.App.4th 328, 331–332 [130 Cal.Rptr.2d 512].) This determination is "best decided by the trial court, and the trial court's judgment on this issue must not be disturbed on appeal 'unless the appellate court is convinced that it is clearly wrong and constitutes an abuse of discretion.' [Citations.]" (*Family Planning Specialists Medical Group, Inc. v. Powers, supra,* 39 Cal.App.4th at p. 1567.)

■ CCLH contends the trial court should have concluded that the litigation conferred a significant benefit on a large segment of the public.[3] It asserts that all commuters in the vicinity of the project benefited from the writ of mandate requiring the City to comply with CEQA, which was enacted

[2] Section 1021.5 reads; "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. . . ."

[3] CCLH conceded at oral argument that the catalyst theory (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 353 [188 Cal.Rptr. 873, 657 P.2d 365]) does not apply to this case.

to protect the public interest. But the mere vindication of a statutory violation is not sufficient to be considered a substantial benefit by itself. (*Woodland Hills Residents Assn. Inc. v. City Council, supra,* 23 Cal.3d at p. 940.) The Supreme Court explained, "Of course, the public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a 'benefit' when illegal private or public conduct is rectified. Both the statutory language ('*significant* benefit') and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (23 Cal.3d at pp. 939–940.)

In *Baggett v. Gates* (1982) 32 Cal.3d 128 [185 Cal.Rptr. 232, 649 P.2d 874], the Supreme Court found the trial court had abused its discretion when it refused to award attorney fees under section 1021.5 to police officers who had successfully established that the Public Safety Officers Procedural Bill of Rights Act (Gov. Code, § 3300 et seq.) applied to charter cities. The Supreme Court reversed the denial of attorney fees, finding there was no reasonable basis for it. "[I]t can scarcely be contended that plaintiffs' litigation has not conferred a 'significant benefit' on the 'general public.' Since enforcement of the Bill of Rights Act should help to maintain stable relations between peace officers and their employers and thus to assure effective law enforcement, plaintiffs' action directly inures to the benefit of the citizenry of this state. . . . No one can be heard to protest that effective law enforcement is not a 'significant benefit.' " (32 Cal.3d at p. 143.)

■ Here, the trial court assessed the circumstances of the case and determined the gains obtained by CCLH did not confer a significant benefit on a large class of people. Having heard the evidence in support of CCLH's challenges to the MND, it rejected all of the claimed defects except one. The trial court agreed the MND did not adequately support the conclusion that the effects of cut-through traffic were mitigated, but it felt the inadequacy was a "minute blemish" that could be repaired. Unlike the plaintiffs in *Baggett*, CCLH did not establish a precedent that applied statewide; rather, it successfully asserted a defect in CEQA's process, the correction of which was not likely to change the project.

■ We recognize that CEQA involves important rights affecting the people of this state and that section 1021.5 was enacted to encourage the enforcement of such legislation by public interest litigation. (*Friends of "B"*

*Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 994 [165 Cal.Rptr. 514].) But enforcement efforts alone do not justify an attorney fee award; the benefit gained must be significant and widespread. The trial court determined it was not. On this record, we cannot conclude that the trial court's determination was a prejudicial abuse of discretion.

## DISPOSITION

The order denying attorney fees is affirmed. Respondents are entitled to costs on appeal.

O'Leary, J., and Ikola, J., concurred.

Appellants' petition for review by the Supreme Court was denied September 28, 2005.